## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARK L. JUSTMAN,

    *Plaintiff,*

  v.

600 ROWLAND, LLC,

    *Defendant.*

Case No. 24-cv-1841-ABA

### MEMORANDUM OPINION

Karen Justman was diagnosed with cirrhosis of the liver in October 2020. One health risk associated with cirrhosis is an elevated risk of illness and death from the vibrio vulnificus bacteria, which sometimes is found in raw oysters. Vibrio infections in healthy people are usually minor, causing perhaps a stomach ache. They are far more dangerous for individuals like Ms. Justman whose livers have been compromised from excessive alcohol intake. Following her diagnosis, Ms. Justman was advised about various diet modifications to remain healthy, but the summary judgment record here reveals that she was never specifically warned not to eat raw oysters. During a meal with her husband in August 2021 at Lee's Landing Dock Bar in Port Deposit, Maryland, she ate raw oysters, became severely ill within days, was hospitalized and diagnosed with a vibrio infection, and died on August 28, 2021.

The Maryland Department of Health ("DOH") requires restaurants to include a specific advisory on their menus: "Consuming raw or undercooked animal foods may increase your risk of contracting a food-borne illness, especially if you have certain medical conditions." Md. Code Reg. 10.15.03.10(F)(3). The menu at Lee's Landing contained a warning about the risks of consuming raw food, but it did not precisely track

the DOH formulation, instead advising customers that "[c]onsuming raw or undercooked seafood or beef may be hazardous to your health." ECF No. 39-1.[1] Ms. Justman's husband, Plaintiff Mark Justman, has sued Lee's Landing ("Defendant") (its corporate entity name is 600 Rowland, LLC), contending that these deviations render the warning inadequate and the restaurant liable for negligence. In particular, he contends that if the warning had included that last phrase required by regulation ("especially if you have certain medical conditions"), Ms. Justman would have conducted additional research before eating raw oysters and would not have eaten them.

To prove his claim, Mr. Justman must show that if the menu had included a DOH-compliant warning, Ms. Justman would not have eaten oysters that day. The evidence to that end is thin; the claim borders on speculation. But there is some evidence in the record that a different warning may have led Ms. Justman to act differently. And Maryland law recognizes a "heeding presumption," which applies in particular where the person whose decision-making is at issue in a failure-to-warn or inadequate-warning case is deceased. Although Maryland cases have not specifically addressed whether the "heeding presumption" applies in a case where, as here, a warning was given but is alleged to have been inadequate—as opposed to where *no* warning was given—the combination of the limited evidence in the record, in conjunction with the heeding presumption, is sufficient for Plaintiff's claim to survive summary judgment. But that is all the heeding presumption does. Plaintiff must still persuade a jury of each element of his negligence claim by a preponderance of the

---

[1] A different, harder-to-read version of the menu was filed as an attachment to Plaintiff's motion. ECF No. 27-2. Plaintiff submitted a higher-resolution hard-copy version of the menu in advance of the hearing, which has been scanned and docketed at ECF No. 39-1.

evidence. For this reason and the others discussed below, the Court will deny both parties' motions for summary judgment.

## I.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Both parties have filed motions for summary judgment. The Court first addresses Plaintiff's Motion For Partial Summary Judgment As To Defendant's Negligence (ECF No. 27). Plaintiff contends that (1) Defendant's advisory deviated from the mandatory DOH formulation; (2) Ms. Justman "was in the class of persons that the requirements of COMAR 10.15.03.10 were designed to protect"; and (3) her death from vibrio "was the very type of harm the regulation was intended to prevent." ECF No. 27-1 at 6–7. Based on those three premises, Plaintiff contends that he is entitled to "summary judgment in favor of Plaintiff and against Defendant as to liability for negligence." *Id.* at 9. With respect to Plaintiff's motion, the pertinent evidence must be construed in the light most favorable to Defendant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *see also Simply Wireless, Inc. v. T-Mobile US, Inc.*, 115 F.4th 266, 277 (4th Cir. 2024) ("When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure.") (quoting *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011)). But the specific evidence in the record ends up not being of significance to Plaintiff's motion. It fails as a matter of law in any event, for two reasons.

First, although proof that a defendant breached the applicable standard of care is *necessary* for a plaintiff to prove a negligence claim, it is not *sufficient*. To establish liability for negligence, a plaintiff must prove "a duty owed to [the plaintiff] (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship

3

between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat. Bank of Md.*, 307 Md. 527, 531 (1986). Thus, for Plaintiff to establish liability, Plaintiff will have to prove, among other things, that if the advisory on the Lee's Landing menu had complied with the DOH regulation—in particular by including the "especially if you have certain medical conditions" language—Ms. Justman would not have eaten the oysters. Plaintiff will also have to prove that it is more likely than not that the vibrio that infected Ms. Justman came from the oysters that she ate at Lee's Landing. There is evidence in the record that she also ate sushi that week, ECF No. 24-2 at 1, although Lee's Landing does not dispute that vibrio is far less likely to occur in sushi than in oysters. *See also* ECF No. 27-4 at 1 (State of Maryland "Vibriosis Fact Sheet" identifying "[e]ating raw or undercooked shellfish" as a potential source of vibrio bacteria, and not identifying raw fish as potential source of vibrio infections). Although there is no dispute that the raw-food warning on the Lee's Landing menu did not comport precisely with the raw-food warning that DOH requires, the evidence is very much disputed on these other prerequisites to liability. Even if a reasonable jury could conclude that violating the DOH regulation constitutes a violation of the applicable standard of care, that does not establish that such breach caused Ms. Justman's death, let alone as a matter of law.

Second, insofar as what Plaintiff is seeking is partial summary judgment on the "breach" element of his negligence claim—*i.e.*, a ruling that Defendant breached the applicable standard of care as a matter of law—that argument fails too, because it misconstrues Maryland law. Plaintiff is correct that the undisputed evidence establishes that the warning that Defendant included on its menu ("Consuming raw or undercooked seafood or beef may be hazardous to your health") deviated from the "consumer advisory" required by DOH ("Consuming raw or undercooked animal foods may

increase your risk of contracting a foodborne illness, especially if you have certain medical conditions."). Md. Code Reg. 10.15.03.10(F)(3). But "the long established general rule in Maryland [is] that the violation of a statutory duty is only evidence of negligence, but does not establish negligence *per se*." *Absolon v. Dollahite*, 376 Md. 547, 553 (2003). In other words, violation of a statutory duty only establishes a "prima facie case" of negligence, not negligence as a matter of law. *Kiriakos v. Phillips*, 448 Md. 440, 457 (2016).

To prove his negligence claim, Plaintiff must prove that Defendant breached the standard of care for restaurants that serve raw food, and specifically the standard of care for warning customers about the health risks of consuming raw seafood (here, oysters). The fact that Lee's Landing did not hew precisely to the DOH-required language is evidence that Plaintiff may offer at trial to attempt to prove that Lee's Landing breached the applicable standard of care. But it is not dispositive evidence; the fact that Lee's Landing did not comply with the DOH regulation does not entitle Plaintiff to judgment as a matter of law, even on the breach element of his negligence claim.

For these reasons, Plaintiff's motion for partial summary judgment (ECF No. 27) will be denied.

## II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues that it is entitled to summary judgment for four reasons. First, Defendant argues that no reasonable jury could conclude that a DOH-compliant warning would have stopped Ms. Justman from eating oysters because Plaintiff lacks expert testimony on "consumer behavior, language comprehension, and risk perception." ECF No. 23 at 4. Second, Defendant argues that the evidence is insufficient to permit a jury to conclude that Ms. Justman died from vibrio from the oysters she ate

at Lee's because (a) Plaintiff's discovery disclosure for Roxan Bardall, CRNP, whom Plaintiff has identified as a hybrid witness, did not satisfy Federal Rule of Civil Procedure 26(a)(2)(C), and (b) medical expert testimony is required to prove that Ms. Justman died from a vibrio infection caused by Defendant's oysters. *Id.* at 5–7. Third, Defendant argues that even if expert testimony on causation is not required, no reasonable jury could conclude that a DOH-compliant warning would have dissuaded Ms. Justman from eating oysters because it is undisputed that she did not know that oysters were risky for people with cirrhosis. *Id.* at 7–9. And fourth, Defendant argues it is entitled at minimum to partial summary judgment on Plaintiff's claim for medical expenses because Plaintiff lacks "expert testimony to support that medical expenses were fair, reasonable, and causally related to the injury being claimed." *Id.* at 6. The Court will begin by recounting the standard of review and the evidence in the record, and then will address those arguments in turn.

## A.     Standard of review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and when the nonmovant bears "the burden of proof at trial." *Celotox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with "sufficient evidence . . . for a jury to return a verdict for that party," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotox*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.");

6

*Matsushita*, 475 U.S. at 587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88.

**B.     Facts pertinent to Defendant's motion**

The record evidence, construed in the light most favorable to Plaintiff (as it must be for purposes of Defendant's summary judgment motion), reflects the following.

Ms. Justman was an attorney who, prior to her death, worked for Accenture Federal Services at Accenture LLP and was responsible for contract negotiation and management. ECF No. 27-5 at 2 (Deposition of Mark Justman ("Justman Dep.") 18:15–20); ECF No. 4 ¶ 20[2]; ECF No. 23-2 at 7 (Justman Dep. 36:10–21); *see also Justman v. Accenture LLP*, No. 24-cv-4107, 2024 WL 4631646, at *1 (E.D. Pa. Oct. 30, 2024) (separate case, related to an employment-related death benefits claim). As noted above, in October 2020 she was diagnosed with cirrhosis of the liver, as well as hepatitis. ECF No. 25-2 at 4 (Plaintiff's interrogatory responses); *see also* ECF No. 4 ¶ 10 (Plaintiff alleging that "[i]n the year prior to the lunch at Lee's Landing Dock Bar, Decedent Karen Justman was treated for a compromised liver and hepatitis attributable to alcohol abuse"). She also was a longtime smoker. ECF No. 27-5 at 2 (Justman Dep. 20:13–22). Mr. Justman testified that, during her life, she was "quite risk averse" and was "very

---

[2] ECF No. 4 is Plaintiff's complaint. Although a plaintiff cannot avoid summary judgment by relying on allegations (as opposed to evidence), the Court cites herein to certain allegations in Plaintiff's complaint that constitute background facts that are not reflected in the evidence the parties have filed but that the parties' briefing reveals are undisputed.

compliant to what doctors would say" with the "one exception being smoking." *Id.* (Justman Dep. 19:22–20:3). After her cirrhosis diagnosis, she remained "completely sober." *Id.* (Justman Dep. 18:11–12).

Following her diagnosis, she also met with nutritionists, for advice on how living with cirrhosis required her to modify her eating habits. According to Mr. Justman, that guidance "focused on controlling salt intake" as the "most important thing . . . for her to concentrate on." *Id.* (Justman Dep. 32:7–12). He explained, "I do not believe her doctors or her nutritionists emphasized the risks of raw [seafood]." *Id.* (Justman Dep. 32:17–18). One of her nutritionists was deposed, and confirmed this recollection. ECF No. 36-2 at 2 (Deposition of Emily Rubin, RD, at 26:7–27:11) (testifying that although she does not recall the content of the advice she provided Ms. Justman, her notes do not reflect any advice about avoiding "raw seafood" and if she had given that advice she believes it would have been recorded in her notes). Mr. Justman testified that if the "hazards of . . . raw seafood" had been "mentioned" during the nutrition counseling, "I believe Karen would have avoided [it]." ECF No. 27-5 at 3 (Justman Dep. 32:14–15). He explained that part of the basis for that belief is that when she was pregnant, she avoided eating sushi, because she had been advised to do so.  *Id.* (Justman Dep. 32:15–16). In short, the undisputed evidence is that Ms. Justman's treating providers did not warn her to avoid eating raw oysters, or any raw foods for that matter.

One restaurant that Mr. and Ms. Justman sometimes patronized was Lee's Landing Dock Bar. *Id.* (Justman Dep. 19:4–7) (explaining that they had been to the restaurant before). The restaurant, which is located on the Susquehanna River near the northern tip of Chesapeake Bay, serves a variety of dishes, with an emphasis on seafood. ECF No. 39-1. The menu contains various shellfish dishes, including "oysters on the half

shell." *Id.* The record does not indicate how often the Justmans went to Lee's Landing, but on one or more prior visits they had ordered and eaten raw oysters. ECF No. 27-5 at 2 (Justman Dep. 19:4–7). Ms. Justman had never had an "adverse reaction[]" to eating raw shellfish on any prior occasion, whether consumed at Lee's Landing or elsewhere. ECF No. 25-2 at 3.

One of the Justmans' visits to Lee's Landing was for lunch on August 21, 2021. ECF No. 27-3 at 3 (Deposition of David Carey ("Carey Dep.") 16:12–18). Among other items, they ordered "a plate of raw oysters." ECF No. 25-2 at 2. Defendant's party representative testified that he did not dispute that the version of the menu on record (ECF No. 39-1) reflects how the menu appeared on that date (and Defendant has not disputed the accuracy of the menu at any other time since). *See* ECF No. 27-3 at 2–3 (Carey Dep. 11:2–13:19). In the bottom-right corner, in text that is the same color (red) as the bulk of the other text on the menu, the menu contains the following warning to customers: "Consuming raw or under-cooked seafood or beef may be hazardous to your health." ECF No. 39-1. That text was in a font slightly smaller than the font size that the menu used for the descriptions of each of the food items on the menu. It appeared just above another warning, "Please Drink Responsibly." *Id.* It appeared just below another warning to customers to carefully consider what to order, because "if you make a selection that you later find is not to your taste, we are unable to remove that item from your bill." *Id.*

In the evening of the day that the Justmans ate lunch at Lee's Landing, Ms. Justman "started experiencing chills, fever, stomach pain and distension, difficulty breathing, swelling of legs, general weakness." ECF No. 23-1 at 3. Two or three days later, she went to the emergency room of Bryn Mawr Hospital in Bryn Mawr,

Pennsylvania. ECF No. 4 ¶ 14. Her breathing worsened, she was intubated, suffered two cardiac arrests, and was transferred to the intensive care unit. *Id.* ¶ 15. Blood work at Bryn Mawr Hospital came back positive for vibrio. *Id.* ¶ 16; ECF No. 23-1 at 4. She was transferred to Thomas Jefferson University in Philadelphia. ECF No. 4 ¶ 17; ECF No. 23-1 at 4–5; ECF No. 24-1. Her condition deteriorated precipitously, with multiple organ failures and necrotizing fasciitis of her legs and abdomen. ECF No. 4 ¶ 18. She suffered "acute liver failure with hepatic coma," ECF No. 25-3 (medical records), and died on August 28, 2021, at 2:50 p.m. ECF No. 24-1. She was 51 years old. *Id.*

The death certificate describes the "immediate cause" of her death as "[s]eptic shock," and the "[f]inal disease or condition resulting in death" as "[v]ibrio culnificus bacteremia." *Id.* According to Mr. Justman's interrogatory answers, Ms. Justman's medical records also "indicate the cause of her death to be septic shock due to infection with vibrio vulnificus bacteremia." ECF No. 23-1 at 4. The death certificate was signed on August 30 by Bardall, ECF No. 24-1, who was one of the nurse practitioners that was part of Ms. Justman's treatment team at Jefferson Hospital. ECF No. 25-3 at 2.

### C.  Is expert testimony required for Plaintiff's causation theory to proceed?

Plaintiff's causation theory here has two components: first, that if the warning had complied with the DOH regulation, Ms. Justman would not have eaten the oysters and, second, that the oysters she ate at Lee's Landing contained vibrio that caused her death. Defendant contends that both aspects of Plaintiff's causation theory require expert testimony. As to the first issue, the Court concludes that expert testimony is not required in the context of this case. As to the second, the Court concludes that Plaintiff has sufficiently designated a witness to provide expert testimony.

### 1. Is a "consumer behavior" expert necessary to create a genuine dispute on causation?

The first basis on which Defendant contends that it is entitled to summary judgment is that Plaintiff has not designated an expert to testify at trial on "how an average consumer interprets and responds to food danger warnings." ECF No. 23 at 4. Defendant contends that that question "implicates specialized knowledge in consumer behavior, language comprehension, and risk perception," and thus is "'beyond the ken of the average laymen.'" *Id.* (quoting *McKerrow v. Buyers Prods. Co.*, Case No. 14-cv-2865-CCB, 2016 WL 1110303, at *2 (D. Md. March 22, 2016)). "Whether a particular patron, like Ms. Justman, would have complied with a warning," Defendant argues, "also depends on probabilistic modeling and empirical research into compliance behavior under particular circumstances." *Id.* at 5. Thus, Defendant contends, without expert testimony on consumer behavior Plaintiff will be unable to prove causation.

In response, Plaintiff contends that no expert testimony is required on the question of whether Ms. Justman would have behaved differently if the warning had included the missing phrase because (1) it will be a "straightforward exercise" for the jury to compare the menu to the DOH regulation and (2) there is sufficient factual (non-expert) evidence in the record, such as Mr. Justman's testimony, from which a jury could conclude that Ms. Justman would not have "ordered and consumed raw oysters if the required warning was provided." ECF No. 24 at 6–7, 8–10.

The question of whether expert testimony is necessary to prove causation turns on whether "determining the cause of a particular incident or occurrence is beyond common experience." *Pryszmont v. Allstate Vehicle & Prop. Ins. Co.*, Case No. 22-cv-2792-JMC, 2024 WL 3090384, at *4 (D. Md. June 21, 2024). The Maryland Supreme

11

Court has articulated the standard as requiring expert testimony "'only when the subject of the inference [to be drawn by the jury] is so particularly related to some science or profession that it is beyond the ken of the average layman'"; it is not required "'on matters of which the jurors would be aware by virtue of common knowledge.'" *Johnson v. State*, 457 Md. 513, 530 (2018) (quoting *Bean v. Dep't of Health & Mental Hygiene*, 406 Md. 419, 432 (2008)). In *Pryszmont*, for example, expert testimony was required to support the plaintiff's claim that damage to her roof was caused by a storm "rather than normal wear and tear or any other non-covered event." 2024 WL 3090384, at *6. In contrast, expert testimony was not required in *Morgan v. Dick's Sporting Goods, Inc.*, to prove that the retail store was negligent when a display sign fell onto the plaintiff's head. Case No. 22-cv-1633-TJS, 2024 WL 3819127, at *4 (D. Md. Aug. 14, 2024).

Here, Plaintiff's theory that Ms. Justman would have made a different decision if the menu had contained a DOH-compliant warning does not require expert evidence to proceed. The reason why is illustrated by comparing this case to *McKerrow*, on which Defendant relies. In *McKerrow*, the plaintiff's hand was injured when a "swing-away trailer jack" "collapsed." 2016 WL 1110303, at *1. The plaintiff asserted "claims against BPC [the defendant] for defects in both design and manufacturing of the jack, and for failure to warn." *Id.* at *2. Judge Blake in that case concluded that the plaintiff required expert testimony on all of the claims, including the failure-to-warn claim. *Id.* Mr. Justman's claim in this case, for negligence, does not entail the type of scientific inquiry that the *McKerrow* claim required. In both cases (*McKerrow* and here), the plaintiffs' failure-to-warn claims require proof, for example, that the defendant's conduct (in *McKerrow*, the alleged manufacturing defect and failure to warn, and here, the discrepancies between the warning on the menu and the warning required by DOH) was

"a substantial factor in causing injury during a reasonably foreseeable use." *Id*. The difference is that lay jurors in *McKerrow* would have been unable without expert testimony to judge, for example, whether the trailer jack collapsed because of a manufacturing defect that was not warned about, or some other reason. In contrast, here, the pertinent question for the jury will be whether Plaintiff has proven by a preponderance of the evidence that Ms. Justman would not have eaten the oysters if the menu warning had tracked the DOH regulation. Lay jurors will be familiar with how restaurant patrons make decisions about what to order at a restaurant. That is different from how a trailer jack is manufactured and how the jack in *McKerrow* collapsed.

For these reasons, Defendant has not shown that it is entitled to summary judgment based on Plaintiff's failure to designate a "consumer behavior" expert.

### 2. Is there adequate evidence for a jury to determine Ms. Justman's cause of death?

With respect to causation, Plaintiff must prove not only that Ms. Justman would not have eaten the oysters if the menu had complied with the DOH regulation, but also that the failure to warn caused Ms. Justman's death, which in turn requires proving that Ms. Justman contracted vibrio from the oysters she ate at Lee's Landing and that the vibrio infection caused her death. Defendant contends that these questions require expert testimony because "how vibrio exposure affects those with a compromised liver is indisputably scientific, technical, or other specialized knowledge that is reserved for expert witnesses." ECF No. 23 at 5–6.

Plaintiff responds that (1) insofar as expert testimony is required on the medical aspects of his case, he will satisfy that burden by calling Bardall, who treated Ms. Justman at Jefferson Hospital and signed the death certificate, ECF No. 24 at 7, and (2)

even if Ms. Bardall could not testify, expert testimony is not required to prove that vibrio was the cause of Ms. Justman's death, *id.* at 5–6. On the first point, Defendant replies that the Court should exclude Ms. Bardall from testifying *as an expert* because the interrogatory in response to which Plaintiff identified Ms. Bardall as a witness requested that Plaintiff "[i]dentify each person, *other than a person intended to be called as an expert witness at trial*, having discoverable information," while Plaintiff's response to a separate interrogatory identifying "each person whom you expect to call as an expert witness at the trial of this case" read "Not yet determined." ECF No. 23-1 at 1 & 6; *see* ECF No. 25 (Defendant's reply brief) at 3–7.

On the witness-designation issue, the Court concludes that Plaintiff's answers to Defendant's interrogatories were sufficient to put Defendant on notice that he planned to call Ms. Bardall as a witness not only about the treatment that Ms. Justman received but also to testify on her cause of death. Plaintiff's answer to the interrogatory expressly stated that the "subject matter" of Ms. Bardall's relevant knowledge constituted "Karen's course of treatment at Thomas Jefferson Hospital and cause of death attributable to septic shock from vibrio vulnificus bacteremia." ECF No. 23-1 at 2. Defendant contends that this disclosure fell short of the requirements in Rule 26(a)(2)(C) for hybrid witnesses. That rule states that a hybrid witness need not produce a "written report" as is required for retained experts, but that a party must nonetheless provide a written disclosure stating "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Here, Plaintiff's answers to interrogatories satisfied that requirement by expressly identifying Ms. Bardall as one of Ms. Justman's treating providers at Jefferson Hospital, and describing the scope of her testimony as "Karen's course of treatment at Thomas Jefferson Hospital and cause of death attributable to septic shock from vibrio vulnificus bacteremia." ECF No. 23-1 at 2 (answer to Interrogatory No. 2). Moreover, those same interrogatory answers incorporated by reference the death certificate (ECF No. 24-1), and in response to an interrogatory requesting that Plaintiff "[i]dentify all tests, studies, or investigations you or your representatives have conducted to determine the cause of Karen Justman's illness," stated that the death certificate, which was signed by Ms. Bardall, "indicate[s] the cause of her death to be septic shock due to infection with vibrio vulnificus bacteremia." ECF No. 23-1 at 4 (answer to Interrogatory No. 21). The answers to interrogatories may have been clearer if, in response to Interrogatory No. 29, Plaintiff had reiterated that Ms. Bardall would testify as a hybrid fact-expert witness, but it was reasonable for Plaintiff to construe Interrogatory No. 29 as drafted (*see id.* at 6) as seeking information only on retained experts. Reading the interrogatory responses as a whole, along with the documents incorporated by reference therein, the Court concludes that Plaintiff adequately discharged his obligations under Rule 26(a)(2)(C).[3] Even if Plaintiff's disclosure was inadequate, they would not be subject to exclusion under Federal Rule of Civil Procedure 37(c) because any prejudice or surprise

---

[3] Plaintiff previously contended that he intended to also call Dr. Madison Force as a witness. Dr. Force was not among Plaintiff's treating providers, but instead was one of several authors of an abstract about Ms. Justman's death that was published in the *American Journal of Gasteroenterology. See* ECF No. 24-2 (Madison Force, MD, *et al.*, A Deadly Case of *Vibrio vulnificus* Bacteremia After Shellfish Consumption in a Patient With Cirrhosis, 117 Am. J. Gastroenterology S2072 (Oct. 2022)). Plaintiff has since then withdrawn any intention to call Dr. Force as a witness at trial.

has since been cured—Defendant took Ms. Bardall's deposition following the initial summary judgment briefing. ECF No. 36 at 13–14; *see also S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) ("[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.").

When a personal injury claim involves a "complicated medical question" that "falls within the province of medical experts," expert testimony is required to prove that the medical condition was caused by the alleged negligent act. *Wilhelm v. State Traffic Safety Commission*, 230 Md. 91, 100 (1962). But "[t]here are . . . many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony." *Id.* at 99. Under Maryland law, expert testimony is not required if (1) "[a] disability develops coincidentally with" or within a "reasonable time after" the subject act; (2) proof of causation is "clearly apparent" from the nature or circumstances of the injury; or (3) "the cause of the injury relates to matters of common experience, knowledge, or observation of laymen." *Id.* Defendant contends that the question of whether Ms. Justman died from a vibrio infection is the type of causation issue that requires expert evidence. Mr. Justman contends that all three *Wilhelm* exceptions apply here: "Karen's illness developed within a day of consuming the raw oysters at Defendant's bar"; "[t]he causal connection

16

between the vibrio vulnificus bacteria and her illness is categorically indicated on her death certificate"; and "a lay person would have general knowledge adequate to understand the risk of consuming uncooked animal food if presented with an adequate warning." ECF No. 35 at 9. But because Ms. Bardall was adequately disclosed as a hybrid witness, the Court need not and does not decide whether a jury could decide Ms. Justman's cause of death without expert testimony.[4]

For these reasons, Plaintiff has identified evidence from which a reasonable jury could conclude that Ms. Justman died from a vibrio infection that she contracted from the oysters she ate at Lee's Landing.

---

[4] Plaintiff also urges the Court to take "judicial notice" of three documents: a "fact sheet" issued by the Maryland Department of Health that states that "[e]ating raw or undercooked shellfish" "can put you at risk for *Vibrio* infection" and that people with "[c]hronic liver disease" are at "higher risk for a serious infection" (ECF No. 31-1); a DOH "Information for Health Care Providers" sheet that describes "*Vibrio*-contaminated shellfish" as an "exposure source[]" for *Vibrio* and notes the elevated risks for people with chronic liver disease (ECF No. 31-2); and a CDC "Clinical Overview of Vibriosis" page that notes that "[i]n people with underlying medical conditions, especially liver disease, *Vibrio* bacteria can cause bloodstream infections characterized by fever, chills, dangerously low blood pressure, blistering skin lesions, and sometimes death" (ECF No. 31-3 at 1). Defendant did not specifically oppose that request for judicial notice, but, as noted above, separately has argued that expert testimony is required to prove that Ms. Justman died from a vibrio infection. Because the Court concludes that Ms. Bardall's testimony is sufficient for Plaintiff's claim to survive summary judgment on the question of whether Ms. Justman died from a vibrio infection, the Court need not and does not decide whether judicial notice applies to those documents or whether they would be admissible at trial. If Plaintiff believes those documents constitute admissible evidence for trial, the Court reserves decision on that issue pending the parties addressing it through motions *in limine*.

**D.    Could a reasonable jury conclude that Ms. Justman would not have eaten the oysters if the warning had contained the DOH-required language?**

For the reasons discussed thus far, the Court concludes that Plaintiff has expert testimony regarding the medical causation issues and may rely on fact evidence, as opposed to expert evidence, to prove that Ms. Justman would have acted differently if the menu had contained a different warning. But even if Plaintiff does not need an *expert* to prove that the restaurant menu's deviation from the regulation's language was a factual and proximate cause of Ms. Justman's death, he still has the burden to prove that element. So: is there sufficient evidence in the record from which a reasonable jury could conclude that, if the menu had contained a DOH-compliant warning, that warning would have prevented Ms. Justman from eating oysters that day?

As noted above, the evidence to that end is thin. It is undisputed that Ms. Justman did not know that her cirrhosis put her at elevated risk of becoming ill from vibrio, and also that she did not know that oysters can contain vibrio. Moreover, it is undisputed that the menu did in fact explicitly warn customers that "[c]onsuming raw or under-cooked seafood or beef may be hazardous to your health." ECF No. 39-1. And it is undisputed that Ms. Justman had eaten raw oysters on prior occasions, and also that she had eaten other raw seafood (sushi) earlier that week. That is strong evidence from which it may be difficult for a reasonable factfinder to find by a preponderance of the evidence that Ms. Justman would not have eaten oysters if the warning had included the phrase "especially if you have certain medical conditions" (per Md. Code Reg. 10.15.03.10(F)(3)).

Nonetheless, the Court concludes that Defendant is not entitled to summary judgment, for two reasons that taken together are sufficient to generate a genuine dispute of material fact on causation.

First, there is admissible evidence in the record from which a reasonable jury could conclude that if the menu had contained the phrase "especially if you have certain medical conditions" Ms. Justman *might* have at least paused and conducted additional research that might have alerted her that she was personally at elevated risk of contracting vibrio from eating raw oysters, especially if the menu had contained an asterisk next to the raw oysters on the menu.[5] Mr. Justman, who as Ms. Justman's husband is a competent witness to testify about her past decisionmaking, testified that although she was unable to control her nicotine addiction and continued to smoke despite knowing the risks, in other domains she took medical advice to heart and followed it, specifically avoiding sushi while she was pregnant and limiting salt intake and remaining sober after her cirrhosis diagnosis. ECF No. 27-5 at 2 & 3 (Justman Dep. 19:12–20:12, 32:7–21). Plaintiff also testified that Ms. Justman, in part because she was an attorney, "was the type of . . . person who would actually read the rental car

---

[5] The DOH regulation requires that menus contain "an asterisk to a footnote that states the item: (a) Is served raw; (b) Is served undercooked; (c) May be cooked to order upon specific consumer request; or (d) Contains raw or undercooked ingredient." Md. Code Reg. 10.15.03.10(F)(2). The asterisk requirement is separate from DOH's direction that a restaurant contain a "written statement" that "Consuming raw or undercooked animal foods may increase your risk of contracting a foodborne illness, especially if you have certain medical conditions." *Id.* 10.15.03.10(F)(3). The Court need not and does not decide whether the absence of an asterisk next to oysters on the Lee's Landing menu constitutes a violation—or whether the font size would also constitute a violation of the regulation, as Plaintiff also has contended—in part because Plaintiff at deposition conceded that he and Ms. Justman knew that the oysters they were eating were raw. ECF No. 27-5 at 3 (Justman Dep. 29:3–6).

agreements" and "did like to dig into things," and because of this disposition would have further investigated the meaning of the DOH-compliant warning, had it appeared on the menu. ECF No. 23-2 at 7 (Justman Dep. 36:10–21). The Court must consider that evidence in the light most favorable to Plaintiff. In that light, although this evidence standing alone likely would be insufficient to generate a genuine dispute of material fact—particularly because Mr. Justman conceded that Ms. Justman "had no idea that the raw oysters posed a much greater degree of risk than they . . . had before, *id.* at 6 (Justman Dep. 32:3–5)—Plaintiff's testimony is arguably evidence from which a reasonable jury could conclude that Ms. Justman *might* have avoided the oysters if the menu had contained a DOH-compliant warning.[6]

Second, and perhaps more importantly, that evidence does not stand alone. Plaintiff has also invoked the operation of the "heeding presumption," which has been recognized under Maryland law at least where plaintiffs allege that a defendant was negligent based on a failure to warn (as here), where the injured person is deceased (as here) and where a defendant gave no warning at all (unlike here, where a warning was given, a distinction addressed below). The presumption is not necessarily *limited* to cases where the injured person is deceased, *see, e.g.*, *U.S. Gypsum Co. v. Mayor and*

---

[6] In referring to Mr. Justman's testimony, the Court does not decide whether Mr. Justman would be permitted to testify about the ultimate causation question, *i.e.*, that Ms. Justman would have behaved differently if the menu had contained a different warning. Although Mr. Justman likely will be permitted to testify about how he observed Ms. Justman make certain health-related decisions in the past, that does not necessarily mean that testimony about the relevant counterfactual—how Ms. Justman would have responded if the menu had contained a DOH-compliant warning—is admissible. The Court will defer ruling on that question and permit the parties to brief that through motions *in limine* in advance of trial.

*City Council of Baltimore*, 336 Md. 145, 162 (1994) (applying presumption to claims by the City of Baltimore against manufacturers, distributors and installers of asbestos-containing building materials), but because Ms. Justman died, the version of the presumption that applies here is the one that the Maryland courts have developed in the context of claims where the person who allegedly was not warned (or was inadequately warned) has died. In such cases, Maryland courts recognize "a presumption that [the decedent] would have read and heeded a legally adequate warning.*" Eagle-Picher Industries, Inc. v. Balbos*, 326 Md. 179, 227 (1992). It is sometimes referred to as "a 'self-preservation' presumption." *Owens-Illinois, Inc. v. Armstrong*, 326 Md. 107, 117 (1992).[7]

The heeding presumption has been recognized because of the inherently counterfactual nature of the causation inquiry that a failure-to-warn case requires, particularly where the injured person is deceased. "'To establish causation a plaintiff should, in theory, be required to prove not only that she would have read, understood, and remembered the warning, but also that she would have altered her conduct to avoid the injury.'" *Eagle-Picher*, 326 Md. at 227 (quoting James Henderson, Jr. & Aaron Twerski, *Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn*, 65 N.Y.U. L. Rev. 265, 305 (1990)). But "where the relevant inquiry concerns the reactions of persons now deceased to hypothetical warnings, the proof of causation becomes more difficult or, depending on one's point of view, more unreal." *Id.*

---

[7] Although the presumption is in some sense an evidentiary rule, and ordinarily federal courts apply federal evidence rules, the Federal Rules of Evidence expressly direct federal courts that in civil cases "state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 302.

In that context, the *Eagle-Picher* court held that there, where the decedents (former shipyard workers) died of "malignant mesothelioma resulting from inhalation of microscopic asbestos fibers" and where the shipyard had not warned workers about the risks of exposure to asbestos, "direct evidence that plaintiffs' decedents would have heeded adequate warnings was not an essential element of the plaintiffs' case." *Id.* at 186–88, 229. Instead, "jurors are entitled to bring to their deliberations their knowledge of the 'natural instinct' and 'disposition' of persons to guard themselves against danger." *Id.* at 229. Thus, even though there was no direct evidence in the record that the deceased shipworkers would have heeded a warning about asbestos exposure, the *Eagle-Picher* court concluded that the "heeding presumption" entitled the plaintiffs to present their case to a jury. Chief Judge Russell of this Court has described the heeding presumption as one that "may assist a plaintiff in establishing the element of causation" in a failure-to-warn case. *Donalds v. Ethicon*, Case No. 20-cv-1659-GLR, 2021 WL 6126297, at *9–10 (D. Md. Dec. 28, 2021) (applying the heeding presumption, but still granting summary judgment to defendant, in a product liability case).[8]

Here, Plaintiff contends that Defendant is liable because it failed to include in its warning to customers that consuming raw seafood posed a health risk "especially if you have certain medical conditions." That theory sufficiently brings this case within the purview of *Eagle-Picher* to permit Plaintiff to invoke the "heeding presumption." Plaintiff's theory is that Ms. Justman would not have eaten the oysters if the warning

---

[8] Some courts have articulated the heeding presumption as supported by comment j to section 402A of the Restatement (Second) of Torts. *See Eagle-Picher*, 325 Md. at 227 n.14 (observing this reasoning as articulated in other cases). But that comment refers to an entirely different presumption premised on distinct conceptual grounding. *See Doctrinal Collapse*, 65 N.Y.U. L. Rev. at 278–79.

had included the "certain medical conditions" language; that specific aspect of the DOH warning was not given; and Ms. Justman is deceased. In that circumstance, it is proper for Plaintiff to invoke the heeding presumption. The fact that Plaintiff's claim is for negligence, as opposed to strict liability, does not appear to affect whether the presumption applies. *See Eagle-Picher*, 326 Md. at 187 (noting that the plaintiffs' verdicts "were rendered solely on their negligence claims"); *U.S. Gypsum Co.*, 336 Md. at 162 (applying the presumption to plaintiffs' claims for negligence and strict liability); *May v. Air & Liquid Sys. Corp.*, 446 Md. 1, 22 n.20 (2015) (applying the heeding presumption to negligent failure to warn claims).

But acknowledging that Plaintiff may *invoke* the "heeding presumption" does not resolve the question of whether applying it here defeats Defendant's motion for summary judgment and permits Plaintiff to take his case to a jury. This is where the no-warning vs. inadequate-warning distinction arises. In *Eagle-Picher* the evidence established that the decedents had received *no* warning about the risks of asbestos during the time periods in question; the defendants "conceded that no defendant warned users of the dangers of asbestos prior to the mid-1960s," and it appears that plaintiffs sought liability based on the pre-1960s exposure. 326 Md. at 188, 220. Thus, in relevant part, *Eagle-Picher* was a case where the defendants gave the decedents no warning at all. So does the *Eagle-Picher* heeding presumption extend here, where Lee's Landing undisputedly did warn its customers that "[c]onsuming raw or under-cooked seafood . . . may be hazardous to your health," but did not specify that such risk arises "especially if you have certain medical conditions"? In other words, does the "heeding presumption" apply where, as here, the decedent was given a warning but the warning is alleged to have been inadequate?

23

Two prominent scholars, in the article on which the Supreme Court of Maryland relied in *Eagle Picher* in articulating the presumption, point out that "warning claims [that] concern themselves with what can fairly be characterized as the relative specificity of warnings" are different in important ways from claims based on a defendant's failure to provide *any* warning. *Doctrinal Collapse*, 65 N.Y.U. L. Rev. at 318–19. They argue that courts "should refuse to hold defendants liable for their failure to include one more tiny piece of information." *Id.* at 314; *see also* Karin L. Bohmholdt, *The Heeding Presumption and Its Application: Distinguishing No Warning from Inadequate Warning*, 37 Loyola-LA L. Rev. 461, 462–63 (2003). Defendant here picks up on that distinction, pointing out that "Maryland courts have not yet discussed the heeding presumption in the context of inadequate warnings, although other states have." ECF No. 36 at 2 (citing, *e.g.*, *General Motors Corp. v. Saenz on Behalf of Saenz*, 873 S.W.2d 353 (Tex. 1993)).

In the abstract, the conceptual foundation for the heeding presumption does at least begin to break down when a defendant gave a warning but it is alleged to have been inadequate. But Mr. Justman has adequately shown that the heeding presumption has sufficient relevance and force to apply here, particularly because the Maryland Department of Health has gone so far as to identify specific language to be included on menus. Professors Henderson and Twerski themselves, while criticizing the heeding presumption generally, advise courts to "defer[] to the determinations of product safety agencies" given that "perceiving and judging the wide spectrum of possible warnings does require significant expertise." *Doctrinal Collapse*, 65 N.Y.U. L. Rev. at 320. Given the Maryland courts' adoption of a heeding presumption and the Maryland public health agency's selection of specific customer-advisory language, together with the evidence in

24

the record about Ms. Justman's predisposition to "dig into things" such as to "read the rental car agreements," ECF No. 23-2 at 7 (Justman Dep. 36:10–21), and her decision-making on health-related issues, there is sufficient evidence from which a reasonable jury could conclude that, if the Lee's Landing menu had complied with the DOH requirements, Ms. Justman would have heeded the warning and decided not to eat the oysters.

Defendant argues that even if a heeding presumption applies, the evidence to the contrary, such as that Ms. Justman did not know that her cirrhosis meant she should avoid raw oysters, and that she in fact disregarded the warning that *was* given, and also that diners "routinely disregard[]" such warnings, means Defendant has rebutted the presumption. ECF No. 36 at 5–9, 12–13; ECF No. 37 at 5–7; *see also Donalds*, 2021 WL 6126287, at *10 (explaining that the heeding presumption can be rebutted by "evidence on the personalities or dispositions" of the party to be warned) (quotations omitted). Based on that evidence, a jury may very well conclude that Plaintiff is unable to prove causation. But the testimony regarding Ms. Justman's predisposition towards thoroughness and taking certain health risks seriously, which the court must construe in the light most favorable to Plaintiff, is sufficient to create a genuine dispute of fact regarding whether the heeding presumption has been rebutted, which means that the causation issue survives summary judgment. Defendant's motion for summary judgment will be denied.

### E.    Medical expenses

Finally, Defendant argues that it is entitled to summary judgment specifically with respect to any claim for medical expenses because Plaintiff has not proffered "expert testimony to support that medical expenses were fair [and] reasonable." ECF

No. 23 at 6 (citing *Desua v. Yokim*, 137 Md. App. 138, 143 & 147 (2001)).[9] Plaintiff argues that "a physician is qualified to testify as to the reasonableness of the charge by a hospital." ECF No. 24 at 8 (citing *Thomas v. Owens*, 28 Md. App. 442, 445 (1975)). To the extent Plaintiff has preserved a claim for medical expenses, it is unclear whether there is any admissible evidence of such expenses. Plaintiff's interrogatory answers do not specify any such expenses (an absence that may constitute a failure to preserve a claim for medical expenses), *see* ECF No. 23-1 at 5, and there is no other evidence in the record of such expenses. The parties seem to agree that evidence of such expenses exists, *see, e.g.*, ECF No. 24 at 8 (referring to "Karen's hospital bills"), even if they have not filed it as part of the summary judgment record.

The Court concludes that this dispute is premature, and should instead be addressed through motions *in limine*. If Plaintiff seeks to recover medical expenses as part of his damages at trial, if preserved, he will need evidence of what those expenses were. And insofar as Plaintiff must show that those expenses were "fair [and] reasonable," ECF No. 23 at 6—which the Court does not decide at this stage—that would require a witness with knowledge pertinent to that issue. Insofar as Defendant contends that medical expenses that Plaintiff incurred are unrecoverable because the amounts billed by the hospital were unreasonably high, it may file a motion *in limine* on that issue in advance of trial. In the meantime, Defendant's request to exclude evidence of the expenses paid for Ms. Justman's treatment will be denied without prejudice to being raised through a motion *in limine*.

---

[9] As noted above, Defendant's argument in part is that Plaintiff lacks an expert on the cause of Ms. Justman's death. That issue is discussed above. This section focuses on the aspect of this argument pertinent to medical expenses.

### III.   CONCLUSION

For the reasons explained above, Plaintiff's motion for partial summary judgment will be denied. Defendant's motion for summary judgment will largely be denied, insofar as the Court concludes that there is sufficient evidence from which a reasonable jury could conclude that a DOH-compliant warning would have prevented Ms. Justman from eating oysters at Lee's Landing, and that vibrio was Ms. Justman's cause of death. But Dr. Madison Force will be excluded from testifying at trial (in light of Plaintiff withdrawing that designation), and the Court reserves deciding whether Plaintiff may present evidence at trial of the medical expenses incurred in connection with Ms. Justman's treatment. A separate order follows.


Date: March 26, 2026                         _____/s/_____
                                             Adam B. Abelson
                                             United States District Judge